Peter C. Dee
Mavronicolas, Mueller, & Dee, LLP
Attorneys for Plaintiffs
950 Third Avenue, 10th Floor
New York, NY 10022
(646) 770-1256

Nicholas Ranallo, Attorney at Law
Co-Counsel for Plaintiffs
371 Dogwood Way
Boulder Creek, CA 95006
 (831) 703- 4011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIAN SILVA, individually, and JULIAN SILVA, on behalf of HANDLE WITH CARE PRODUCTIONS, INC. <br>        Plaintiff, <br><br> v. <br><br> JOSE VASQUEZ COFRESI, individually, <br><br>        -and- <br><br> HANDLE WITH CARE PRODUCTIONS, INC., a New York Corporation and Nominal Defendant | ECF Case <br><br> 13 Civ. 3200 (CM) (JCF) <br><br><br> **VERIFIED COMPLAINT** |

Julian Silva ("Plaintiff"), a rightful shareholder and officer of Handle With Care

Productions, Inc., files this complaint seeking to remedy Defendants' violations of the law,

including trademark infringement, copyright infringement, and breaches of fiduciary duties

related to the events described herein that have caused substantial financial losses to Plaintiff and

Handle With Care Productions, and other damages including, but not limited to, its reputation

and goodwill.  Plaintiff, by his undersigned attorneys, Mavronicolas Mueller & Dee, LLP and

Nicholas Ranallo, Esq., complaining of the Defendants herein, alleges upon personal knowledge

as to his own acts, and upon information and belief as to all other matters, based upon, inter alia,

investigations conducted by Plaintiff and his counsel, as well as internal investigations conducted by the American Society of Composers, Authors, and Publishers ("ASCAP"), as follows:

### Jurisdiction and Venue

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §2201 et seq (Declaratory Judgment Act), §1331 (federal question); §1338(a) (acts of Congress relating to trademarks) and 28 U.S.C. 1367 (supplemental jurisdiction over state law claims).

2. This court has personal jurisdiction over the defendants by virtue of defendants' residence within the forum, incorporation within the forum, and/or due to the fact that a substantial portion of the events or omissions giving rise to suit occurred in the district.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391 and §1400 because defendant resides in the district and does business in the district. Nominal defendant likewise maintains its principle place of business within the district.

### The Parties

4. Plaintiff Julian Silva ("Plaintiff") is a California resident and rightful 50% shareholder in Handle With Care Productions, Inc. ("HWCP"). Plaintiff is also co-founder of "La Excelencia," a musical group whose works and actions form the basis of the instant complaint.

5. Defendant Jose Vasquez-Cofresi ("Defendant") is likewise a 50% shareholder in HWCP and a co-founder of "La Excelencia" with Plaintiff Silva. Upon information and belief, Defendant resides at 58 Marble Hill Ave, C22, in Bronx, New York, 10463.

6. Nominal defendant HWCP is a New York Corporation, with its offices at 58 Marble Hill Avenue, C22, Bronx, New York, 10463. Prior to the unauthorized transfers described herein, HWCP was the owner of the registered trademark in "La Excelencia" (the "La Ex Mark") and the senior user of the "Handle With Care Productions" mark that was subsequently registered by Defendant in his individual capacity (the "HWCP mark").

7. At all relevant times, Defendant Vasquez-Cofresi acted as President of HWCP and was

responsible for day-to-day management of the entity.

## Facts Common to All Claims

8.  Plaintiff and Defendant first met in 1994 and began working and performing together frequently in the months and years following their initial meeting.

9.  Plaintiff and Defendant first performed together in Birmingham, AL in 1996 as part of Defendant's former band, "Latin Sounds."

10. Subsequently, in 1996, Defendant moved to Louisiana and co-founded musical group called "Los Calientes Del Son" ("LCDS") with Plaintiff.

11. During the period from 1996-1998, LCDS toured extensively throughout the southeastern United States.

12. In 1999, LCDS release their debut album, A Mi Pueblo, named after Plaintiff's first composition.[1]

13. In 2000, Nuevo Mundo Music, a record label based in New York, began showing interest in signing LCDS to a music contract.

14. In January, 2001, Plaintiff moved to New York City to pursue additional opportunities and reconstitute LCDS.

15. On or around February, 2001, Defendant joined Plaintiff in New York.  Shortly thereafter, Plaintiff and Defendant begin looking for musicians in the New York area to augment LCDS.

16. Plaintiff and Defendant ultimately hired non-party musicians Willy Rodriguez, Charlie Dilone, and Ronald Prokopez to complete the LCDS lineup.

17. Upon filling out the lineup, LCDS began playing live shows throughout the New York metro area, playing both cover songs and original compositions.

18. LCDS ultimately signed an agreement with Nuevo Mundo Records for the creation and

---

[1] This suit involves several albums that share the names of individual songs on the album.  To avoid confusion, albums will be underlined in this complaint, and individual songs will be contained in quotation marks only.

distribution of an LCDS album.

19. Throughout the period from 2001-2004, LCDS played live shows extensively in the New York metro area, though progress on the LCDS album eventually stalled.

20. In 2005, Plaintiff and Defendant began discussions regarding leaving Nuevo Mundo Music and forming a new band with new, original music. Nuevo Mundo Music eventually consented to the move, and released Plaintiff and Defendant from all contractual obligations.

21. Following their release from Nuevo Mundo, Plaintiff and Defendant agreed to create a new joint venture and new original band, "La Excelencia." ("The Original Band"). Plaintiff and Defendant agreed to split ownership, investment, and all profits associated with La Excelencia on a 50/50 basis.

22. Plaintiff and Defendant operated under a verbal agreement distinguishing the respective responsibilities of the parties in the management and operation of The Original Band.

23. In accordance with the agreement described in ¶22, Plaintiff would be responsible for the creative aspects of the band and the business, and Defendant would take responsibility for the formal business responsibilities of The Original Band, including accounting and distribution of revenues. Each party likewise agreed that neither party would have the right to use the name "La Excelencia" without the participation or consent of the other.

24. Plaintiff and Defendant likewise agreed that each would individually retain the copyrights for their respective music, lyrics, or any other works created during the life of The Original Band. In accordance with this agreement, Plaintiff and Defendant regularly filed separate copyright applications for their individually authored music and/or lyrics.

25. Plaintiff has registered the following compilations in his individual capacity, (containing the individual songs enumerated below each), with the United States Copyright Office:

   a) Julian Silva 2006 Collection, (Registration Number – PAU3-033-703) registering both the music and the lyrics to the following songs:

      i)     La Lucha

      ii)    Solo Sin Amor

      iii)     Sentencia

      iv)     El Tiempo en tus Manos

      v)     La Salsa y el Guaguanco

      vi)     El Loco

      vii)     Cada Dia

      viii)     Boogalu Pa Colombia

      ix)     La Lucha (Featuring Shanny)

b) Hijo de los Rumberos (Registration Number -  PAU2-750-391), registering the music and the lyrics for the song "Hijo de los Rumberos."

c) American Sueño et al. (Registration Number PAU3-357-226), registering the music and/or the lyrics for the following songs:

      i)     Salsa Dura

      ii)     Unidad

      iii)     Ahora Que Te Tengo Aqui

      iv)     Caminando

      v)     American Sueno

      vi)     Por Tu Traicion (Salsa Version)

      vii)     Ana Pa' Mi Tambor

      viii)     Duelo De Bongo

      ix)     Deja De Criticar

      x)     Vendio Su Corazon

d) Maria et al.; (Registration Number PAU3-558-852) registering only the music for the following songs:

      i)  Dale Otra Oportunidad

      ii)  Nueva York Sin Ti

      iii)  Maria

      iv)  Entre Espinas

     v)  La Economia (Album and Single Versions)

     vi)  Lyanla

   e)  Guerrero et al. (Registration Number PAU3-558-826) registering both the music and the lyrics for the following songs:

     i)  Pal' Mundo Entero

     ii)  Guerrero

     iii)  Anoche Sone Contigo

     iv)  Vagabund

26. Exhibit A represents a true and correct copy of the registration documents in Plaintiff's possession related to the works described in the preceding paragraph.

27. Plaintiff and Defendant began touring as La Excelencia in 2005.

28. In late 2005, La Excelencia entered the studio to begin working on their debut album, eventually titled Salsa Con Conciencia.

29. With the exception of the song "Estoy," which included music by non-party Eric Andres, Plaintiff was the sole author of music for each song on Salsa Con Conciencia and the sole author of the lyrics to four of the songs on the album.  Plaintiff likewise produced, directed, and mixed all music on the debut album and created the cover art and layout of the album jacket.

30. Plaintiff has registered the copyrights for the lyrics and/or music for each of his works of authorship that appear on Salsa Con Conciencia via registration numbers PAU3-033-703 (Julian Silva 2006 Collection) and PAU2-750-391 (Hijo De Los Rumberos), as described above.

31. In January, 2006, Plaintiff and Defendant formed HWCP to act as the record label behind La Excelencia, and potentially other acts.  Plaintiff and Defendant were each 50% shareholders in HWCP, and HWCP was duly registered with the New York Secretary of State.

32. HWCP did not federally register the HWCP Mark, though it continually used the mark in commerce from 2006 until the unlawful dissolution of the HWCP entity described herein.

33. Following the unlawful dissolution of HWCP, Defendant personally applied for federal registration of the HWCP Mark, despite actual knowledge that HWCP was the rightful owner of the mark and the first to use the HWCP Mark in commerce.

34. On December 15, 2006, Plaintiff and Defendant created "Silvaz Publishing," to function as the publishing company for the Original Band.  Silvaz Publishing was never formally incorporated, though Plaintiff and Defendant agreed to equally share profits and losses from the joint venture.

35. Publishing royalties and distributions from ASCAP belonging to Silvaz Publishing were deposited directly into HWCP bank account(s) maintained by Defendant for the benefit of both Plaintiff and Defendant.

36. At all relevant times, Defendant maintained functional control over the Silvaz Publishing accounts and was responsible for income distributions therefrom.

37. Throughout 2006, Plaintiff created and designed a number of additional works in support of the Original Band, including logos, cover art and t-shirt designs.  Plaintiff has not registered his copyright in these works.

38. In 2008, Plaintiff began writing the music and creating the concepts for La Excelencia's planned second album, which would eventually be titled Mi Tumbao Social.

39. With one exception ("Por Tu Traicion – Bolero Version"), Plaintiff wrote all music for Mi Tumbao Social, and was likewise the sole author of the lyrics to five songs included on the album. Plaintiff likewise created all album art, CD layouts, posters, t-shirts, and other merchandise associated with the second album.

40. Plaintiff has registered the copyrights for each of his works of authorship included on Mi Tumbao Social via registration number PAU3-357-226 (American Sueno, et. al).

41. Mi Tumbao Social was released in 2009 and was followed by two European tours and substantial acclaim, including a 2009 cover story in Latin Beat Magazine and a 2010 feature in the New York Times.

42. Following the success of Mi Tumbao Social, in 2010-2011 Plaintiff began writing music and

creating concepts for La Excelencia's planned third album, eventually titled <u>Ecos del Barrio.</u>

43. With one exception ("Descarga La Excelencia"), Plaintiff wrote all music for <u>Ecos del Barrio,</u> and was likewise the sole author of the lyrics to four songs appearing on the album. Plaintiff also produced, directed, and mixed the sound recordings for this album.

44. Plaintiff has separately registered the copyrights for each of his works of authorship included on <u>Ecos del Barrio</u> via registration numbers PAU3-558-852 and PAU3-558-826, as described in ¶25.

45. Sometime in or around 2011, Plaintiff began to express concerns regarding some of Defendant's business decisions and account procedures and verbally requested access to the financial accounts of HWCP from Defendant.

46. In February, 2012, La Excelencia released its third album, <u>Ecos del Barrio</u>.

47. In or about April, 2012, Defendant scheduled a CD release party for <u>Ecos del Barrio</u>, without consulting Plaintiff.  The release party was ultimately a failure due to poor promotion, and Plaintiff's concerns surrounding Defendant's management decisions began to grow.

48. In or about June, 2012, Plaintiff and Defendant agreed to meet regarding financial concerns associated with La Excelencia and HWCP, and the logistics of a planned European tour. During this conversation, Defendant informed Plaintiff of outstanding royalties due to Plaintiff in connection with television licensing fees from the popular television show "So You Think You Can Dance."

49. Despite due demand, the royalties described in the preceding paragraph remain unpaid as of the date of the instant complaint.

50.  In early July, 2012, Plaintiff informed Defendant about possibly needing to miss part or all of a planned European tour due to the advanced stage of his wife's pregnancy.

51. On or about July 10, 2012, La Excelencia's tour manager Johan Vranken contacted Plaintiff and demanded final confirmation of whether Plaintiff would be able to attend all of the European dates.

52. On or about July 13, 2012, Plaintiff attempted to contact Defendant via email to discuss the

upcoming tour.  Plaintiff received no response.

53. On or about July 16, 2012, Plaintiff again contacted Defendant to inform him that Plaintiff would be available for the upcoming European tour.  On or about July 16th, 2012, Plaintiff also contacted Mr. Vranken to confirm his availability for the upcoming dates.

54. On or about July 18th, 2012, Defendant notified Plaintiff that it was too late to book a flight for Plaintiff.  Upon information and belief, no attempt was made to search for flights that would allow Plaintiff to participate in any or all of the European tour.  Defendant and the remaining members of La Excelencia departed for Europe on July 18 and 19, 2012.

55. On or about July 28, 2012, Plaintiff contacted Defendant and insisted upon meeting with Defendant in person following La Excelencia's return.

56. On or about July 30, 2012, Defendant contacted Plaintiff to inform him that ZUMBA Fitness requested a licensing agreement for use of the song "La Economia" in connection with its popular fitness program.  Upon information and belief, Defendant consummated the proposed agreement with ZUMBA.

57. Despite due demand, Plaintiff has not been paid any portion of the licensing fees or royalties due under the agreement.

58. The relationship between Plaintiff and Defendant deteriorated rapidly following La Excelencia's return from Europe. Plaintiff repeatedly requested to meet with Defendant in person to discuss the band's future, management and finances.

59. Plaintiff and Defendant eventually scheduled the requested meeting for August 14, 2012.  On August 14, 2012, Defendant backed out of the scheduled meeting.  In the following days, Plaintiff again requested to meet with Defendant regarding the band and its future.

60. On August 18, 2012, La Excelencia was scheduled to perform in Queens, New York.  Plaintiff notified Defendant that he would not be attending the performance in light of Defendant's failure to respond to Plaintiff's prior entreaties.

61. In the days following August 18, 2012, Defendant began to systematically remove Plaintiff from functional membership in La Excelencia, HWCP, and SilVaz Publishing.  During this

period, Defendant removed Plaintiff's administrative privileges from the La Excelencia's Facebook page, as well as scrubbing all mention of Plaintiff from La Excelencia's biography on laexcelencia.net, and all other associations between Plaintiff and La Excelencia, Silvaz Publishing, and HWCP.

62. On or about August 21, 2012, Plaintiff formally demanded that Defendant hand over organizational documents related to La Excelencia and the associated businesses.  Plaintiff likewise requested access to the all business and bank accounts associated with La Excelencia and the related businesses.  Defendant failed to provide any of the requested documents or access.

63. On or about August 21, 2012, Defendant took additional steps to exclude Plaintiff from the operation and control of La Excelencia and the  related businesses.  In furtherance of this scheme, Defendant fully deleted Plaintiff from La Excelencia's Facebook account, and opened a new Facebook account under the name "Orquesta La Excelencia."

64. On or about this same date, August 21, 2012, Defendant unlawfully transferred ownership of the trademark "La Excelencia," from HWCP to himself, in his personal and individual capacity.  Plaintiff did not consent in any way, explicitly or impliedly, in the transfer of HWCP's corporate property and was not informed of the transfer by Defendant or anyone else.  A copy of the purported trademark assignment and accompanying documents are annexed to this complaint as Exhibit B.

65. The trademark assignment described in the preceding paragraph states that HWCP was paid a sum of $8000 for the rights to the La Excelencia Mark.  Plaintiff has never received any portion of the proceeds from the transfer of the La Excelencia Mark.

66. In executing the transfer described in ¶64, Defendant falsely represented, *inter alia*, that Defendant "has the right, power, and authority and authority to enter into this Agreement."

67. On or around this same date, August 21, 2012, Defendant filed a trademark application for the service mark "Handle With Care Productions, Inc.," in his individual capacity, without the consent of Plaintiff or HWCP.

68. The mark "Handle With Care Productions," was first used in commerce by HWCP in connection with the marketing and distribution of the Original Band's albums, and the goodwill associated with the mark rightly belongs to HWCP.

69. Upon information and belief, on or about August 21, 2012, Defendant unlawfully transferred Plaintiff's shares in HWCP to Defendant, without notifying Plaintiff and wholly without the consent or authorization of Plaintiff.  Plaintiff did not execute any documents transferring any shares or ownership rights from HWCP to Defendant.

70. Following Plaintiff's exclusion from the Original Band and the related entities, Defendant formally or informally created a new band (the "New Band") without Plaintiff's participation.  The New Band continues to operate using the moniker "La Excelencia," despite due demand that the New Band cease and desist all such use.

71. On August 28, 2012, Plaintiff again contacted Defendant to request all business related information and information related to La Excelencia and the associated businesses' accounts.

72. On or around August 31, 2012, Defendant sent a letter dated August 30, 2012, to ASCAP stating that HWCP would be dissolved and that he wanted to "change the name to my new business that is being developed named La Excelencia...a sole proprietorship."

73. In reliance on the letter described in paragraph 72, on or around September 5, 2012, ASCAP updated its records to reflect that Silvaz Publishing/HWCP would be a sole proprietorship, and removed the identification of Plaintiff as "Vice President" from the(se) entities.

74. On or around September 7, 2012, Plaintiff, through his prior counsel, sent a Cease and Desist letter to Defendant via email and certified mail, noting that Defendant was "continuing to use the band name, the Works, and operate the business of Handle With Care Productions, Inc., and SilVaz Publishing, including the use of social media sites (the "Business") without Mr. Silva's authorization or consent," and demanding that Defendant cease all infringement of Plaintiff's copyrights and trademarks.

75. On or around October 4 and 5, 2012, Defendant began submitting "updated" title

registrations for a number of songs in the SilVaz Publishing catalog on file with ASCAP, altering the respective shares of each work attributable and payable to Defendant and Plaintiff, without the authorization of Plaintiff, and to the detriment of Plaintiff.

76. On November 7, 2012, Plaintiff contacted ASCAP and filed a formal complaint against Defendant regarding the suspicious activity associated with Plaintiff's ASCAP catalog and SilVaz Publishing.

77. On November 21, 2012, ASCAP notified Defendant of Plaintiff's objection to the recent changes, and gave Defendant until January 9, 2013, to respond to the complaint.  Defendant never responded to the ASCAP inquiry, and the original royalty percentages and ownership interests of Plaintiff were reinstated.

78. On or around November 23, 2012, Defendant unlawfully caused Handle With Care Productions, Inc., to be dissolved, without the knowledge, consent, or authorization of Plaintiff.  Upon information and belief, Defendant fraudulently transferred Plaintiff's shares in HWCP and/or fraudulently misrepresented the ownership of HWCP to the State of New York to accomplish this dissolution.

79. Plaintiff has not received any distributions of assets related to the dissolution of HWCP and, upon information and belief, Defendant has wrongly appropriated all assets of HWCP for Defendant's sole personal benefit, to the detriment of Plaintiff and HWCP.

80. On January 17, 2013, ASCAP notified both Plaintiff and Defendant that it would not further update any records related to SilVaz Publishing or respective royalty rates without the consent of Plaintiff and Defendant, and further required that any further changes to the entity records would need to be made through ASCAP's Business Affairs department.

81. Upon information and belief, on or around December 3, 2012, Defendant, without Plaintiff's knowledge, authorization, and/or consent, filed a federal copyright application claiming copyrights for the albums Mi Tumbao Social and Ecos del Barrio, purportedly on behalf of copyright claimant "La Excelencia."

82. Defendant was subsequently granted improper Copyright Registrations for the sound

recordings, music, and lyrics on <u>Mi Tumbao Social</u> (Registration Number SR0000713914) and <u>Ecos del Barrio,</u> (Registration Number SR0000713914).

83. Plaintiff is the sole owner of the copyright in the words and music for a large number of works included on the applications described in Paragraph 81.

84. Plaintiff did not, at any time, transfer or otherwise assign his copyrights in the music and/or lyrics and/or sound recordings described herein to Defendant or "La Excelencia."

85. Plaintiff is informed and believes, and thereupon alleges that Defendant made, or caused to be made, knowingly false representations in order to procure the Copyright Registrations described in paragraph 81, to wit, that Plaintiff had transferred the relevant copyrights in the works included in <u>Mi Tumbao Social</u> (Registration Number SR0000713914) and <u>Ecos del Barrio,</u> (Registration Number SR0000713914) to La Excelencia via written assignment.

86. Plaintiff is informed and believes and thereupon alleges that Defendant falsely applied, or caused another to falsely apply, Plaintiff's signature to a copyright assignment agreement purporting to transfer Plaintiff's interest in the relevant copyrights to Defendant, operating individually under the name "La Excelencia" (the "New Band").

87. As of the date of the instant complaint, Defendant continues to use the misappropriated trademarks "La Excelencia," and "Handle With Care Productions," to describe the New Band, despite the obvious association of each mark with Plaintiff and the Original Band.

88. Upon information and belief, as of the date of the instant complaint and after formal demand to Cease and Desist, Defendant has intentionally continued to distribute and publicly perform musical works belonging solely to Plaintiff, without Plaintiff's authorization or authorization from ASCAP or any other performing rights organization. These continued public performances infringe on Plaintiff's sole rights to publicly perform his copyrighted works.

89. Defendant likewise continues to intentionally infringe upon Plaintiff's copyright protected lyrics by distributing said works, via the website laexcellencia.net, without Plaintiff's authorization, thereby violating Plaintiff's exclusive right to copyright and distribute his duly copyrighted lyrics.

90. Plaintiff has timely registered the following collections, as described further in ¶25 herein. Each collection includes several lyrical compositions that continue to be distributed in text form by Defendant, via laexcelencia.net:

   - Julian Silva 2006 Collection – PAU3-033-703

   - Hijo de los Rumberos – PAU2-750-391

   - American Sueño et al. – PAU3-357-226

   - Guerrero et al. – PAU3-558-826

91. Defendant has effectively removed Plaintiff from the Original Band, though Defendant continues to use the La Ex Mark and the HWCP Mark in connection with the New Band.

92. Plaintiff is informed and believes, and thereupon alleges that Defendant has registered an additional trademark, "Orquesta La Excelencia," for use in connection with the New Band.

93. Plaintiff is informed and believes, and thereupon alleges, that Defendant intends to continue using the La Excelencia and HWCP Marks to distribute the New Band's planned release, without Plaintiff's participation, authorization, or consent.

94. Plaintiff is informed and believes, and thereupon alleges, that each of the foregoing actions of Defendant with regard to the registered and common law trademarks will falsely mislead and/or confuse customers about the source of origin, association, sponsorship, approval, or other continuing business relationship between Plaintiff and the Original Band, on the one hand, and the New Band's goods and services, on the other.

95. Defendant's use of the La Excelencia name, or confusingly similar imitations thereof like "Orquesta La Excelencia," is unfair, unlawful, and is likely to lead customers to mistakenly or falsely believe that Defendant's goods and services are associated with, or made, sponsored, or approved by Plaintiff and/or the Original Band, which is not the case. Defendant will unfairly benefit from Plaintiff and the Original Band's goodwill and hard-earned reputation for quality and consistency.

96. As a result of Plaintiff's efforts, Defendant's New Band has acquired a following and a fan base that they otherwise would not have had.  These consequences were entirely foreseeable

at the time Defendant improperly appropriated the La Excelencia and HWCP marks.

97. Plaintiff is informed and believes, and thereupon alleges, that as a proximate result of the advantage accruing to Defendant's business as a proximate result of the confusion, deception, and/or mistake caused by the actions herein alleged, Defendant has received illicit profits and wrongful gains, and Plaintiff has suffered damages.

98. Plaintiff is further informed and believes, and thereupon alleges, that Defendant's actions alleged herein are willful, intentional, unreasonable, and malicious.  Given the nature and extent of the unauthorized use and Defendant's fraudulent actions with regard to the trademarks and copyrights, Plaintiff is informed and believes, and thereupon alleges, that Defendant's actions and infringements are willful and objectively unreasonable, such that Plaintiff should recover enhanced damages and attorney's fees.

99. Plaintiff has not made a demand on the board of HWCP because such demand would be futile.  As described herein, Defendant is a rightful 50% shareholder of HWCP and, by virtue thereof, and inasmuch as Defendant is the sole cause of, and beneficiary of, the misappropriation of HWCP's assets and opportunities, will continue to prevent HWCP from asserting its rightful claims.

100.    This action is not a collusive action designed to confer jurisdiction that this court would otherwise lack.


## FIRST CAUSE OF ACTION – TRADEMARK INFRINGEMENT
### (15 U.S.C. §1114)

101.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 100 as though fully set forth herein.

102.    Defendant's acts described above constitute infringement and/or contributory infringement of the "La Excelencia" trademark in violation of section 32 of the Lanham Act, 15 USC §1114.

103.    As a result of the foregoing infringement, HWCP has been injured, and Defendant has

received illicit profits and wrongful gains.

104.    Defendant's conduct has caused, and if not enjoined will continue to cause additional harm to Plaintiff amounting to irreparable in a manner that cannot be calculated or adequately compensated wholly by monetary damages.  Plaintiff has no adequate remedy at law for such harm.

## SECOND CAUSE OF ACTION – FALSE DESIGNATION OF ORIGIN

### (15 U.S.C. §1125(a) and New York Common Law)

105.    Plaintiff repeats and realleges the allegations in paragraphs 1- 104 as though fully set forth herein.

106.    With full knowledge of Plaintiff and HWCP's rights in the name and trademarks La Excelencia and HWCP, Defendant continues to make use of a colorable imitation of the names and marks, including without limitation through the performance and recording of music (including without limitation music composed by Plaintiff), as well as the sale, offering for sale, distribution and dissemination of pre-recorded music and ancillary merchandise, in order to capitalize on the good name, notoriety, reputation and goodwill accumulated by Plaintiff and HWCP.

107.    Additionally, with full knowledge of Plaintiff's contributions to The Original Band and its musical and artistic works, Defendant has removed credits and references to Plaintiff, thereby creating the false belief that the Defendant and/or the New Band has created the subject musical and artistic works, and necessarily resulting in consumer confusion as to the true origins of the products and services.

108.    The actions described above are unlawful by, inter alia, creating and/or by permitting others to create a false designation of origin and/or to unfairly compete in a manner which is likely to cause confusion, or cause mistake, or deceive consumers as to the affiliation, connection, or association between Defendant and Plaintiff, or as to the origin, sponsorship, or approval by Plaintiff of Defendant's goods, services and activities, in violation of the Lanham

Act, 15 U.S.C. §1125 (a)(1)(A) and/or the common law of the state of New York.

109.    Defendant's acts as alleged above misrepresent the nature, characteristics, and/or qualities of Defendant's goods, services, activities, or information in violation of the Lanham Act, 15 USC §1125(a)(1)(B) and/or the common law of the state of New York.

110.    As a result of the acts alleged herein, Plaintiff has been injured and Defendant has received illicit profits and wrongful gains.

111.    Defendant's conduct has caused, and if not enjoined will continue to cause additional harm to Plaintiff amounting to irreparable in a manner that cannot be calculated or adequately compensated wholly by monetary damages.  Plaintiff has no adequate remedy at law for such harm.

### THIRD CAUSE OF ACTION – MISREPRESENTATION AND PASSING OFF

(15 U.S.C. §1125(a) and New York Common Law)

112.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 111 as though fully set forth herein.

113.    With knowledge of Plaintiff and HWCP's rights in the La Excelenia Mark, Defendants continue to make a colorable imitation of the mark, including without limitation through the performance and recording of music, including without limitation music composed entirely by Plaintiff, as well as the sale, offering for sale, distribution, and/or dissemination of prerecorded music and ancillary merchandise in order to capitalize on the good name, notoriety, reputation, and goodwill of HWCP and Plaintiff.

114.    Defendant's acts as alleged herein are unlawful by, inter alia, passing themselves off and/or permitting others to pass Defendant off as the group comprising the Original Members, in a manner which is likely to cause confusion or cause mistake, or deceive consumers as to the affiliation, connection, or association between Defendant, Plaintiff, and/or HWCP, or as to the origin, sponsorship, or approval by Plaintiff and/or HWCP of Defendant's goods, services, and/or activities, in violation of the Lanham Act, 15 USC §1125(a)1(A) and common law.

115.    Defendant's acts as alleged herein likewise misrepresent the nature, characteristics, quality, or origin of Defendant's goods , services, or activities in violation of the Lanham Act, 15 USC §1125(a)(1)(B) and/or the common law.

116.    As a result of the foregoing, Plaintiff has been injured, and Defendant has received illicit profits and wrongful gains.

117.    Defendant's conduct has also caused, and if not enjoined will continue to cause, irreparable  damage to the Name, as well as to Plaintiff's good name, reputation, and goodwill, in a manner that cannot be calculated or compensated in money damages.  As such, Plaintiff has no adequate remedy at law.

## FOURTH CAUSE OF ACTION – TRADEMARK DILUTION

(N.Y. Gen. Bus. Law §360-1)

118.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 117 as though fully set forth herein.

119.    Defendant's acts and conduct relating to the marks "La Excelencia," "Handle With Care Productions," and "Orquesta La Excelencia," as alleged herein constitute dilution of the distinctive qualities  of the Plaintiff's trademark within the meaning of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law Section 360-1, in that said use causes likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendant's products and services and will likely cause a blurring of the distinctive source identification quality of the Plaintiff's trademarks in the United States.

120.    Unless the Court enjoins Defendants, under the provisions of N.Y. Gen. Bus. Law §368-D, Defendant will continue to engage in activities which dilute the distinctive quality of Plaintiff's trademarks, thereby deceiving the purchasing public and causing immediate and irreparable damage to Plaintiff for which he has no adequate remedy at law.

**FIFTH CAUSE OF ACTION – UNFAIR COMPETITION**

(Common Law – New York)

121.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 120 as though fully set forth herein.

122.    Defendant, by virtue of the acts alleged herein, have willfully, knowingly, maliciously, and intentionally engaged in acts of unfair completion under the common law of the State of New York, including without limitation, palming off, and/or attempting to palm off, and or enabling others to palm off the New Band's products and services as products and services made by, sponsored by, or authorized by, the original band, including Plaintiff.

123.    As a result of the acts alleged herein, Plaintiff has been injured, and Defendant has received illicit profits and wrongful gains.

124.    Defendant's conduct has also caused, and if not enjoined will continue to cause, irreparable  damage to the relevant  marks, as well as to Plaintiff's good name, reputation, and goodwill, in a manner that cannot be calculated or compensated in money damages.  As such, Plaintiff has no adequate remedy at law.

**SIXTH CAUSE OF ACTION – VIOLATION OF NEW YORK BCL §720**

(New York Business and Corporations Law §720)

125.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 124 as though fully set forth herein.

126.    Defendant was an officer of HWCP throughout the relevant period herein and owed fiduciary duties to the corporation and its shareholders, including Plaintiff.

127.    Plaintiff was likewise an officer of HWCP from its inception until its unlawful dissolution.

128.    Defendants actions as alleged herein are unlawful by, inter alia, failing to perform his duties with regard to the disposition of corporate assets.

129.    Moreover, defendant has unlawfully wasted corporate assets and unlawfully acquired

property and assets rightfully belonging to HWCP, in violation of New York Business Corporations Law §720(a)(1)(B).

130.    Defendant has unlawfully conveyed HWCP assets to himself in his individual capacity with knowledge of the unlawfulness of his activities and with full knowledge of the fact that Plaintiff was at all times a 50% shareholder in HWCP and entitled to equal control and equal distribution of corporate assets.

**131.**    As a result of the foregoing, Plaintiff has been injured, and Defendant has received illicit profits and wrongful gains.


### SEVENTH CAUSE OF ACTION – VIOLATION OF BCL §719

132.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 131 as though fully set forth herein.

133.    As described above, Defendant improperly dissolved HWCP on or around November 23, 2012, without the knowledge, authorization, or consent of Plaintiff.

134.    Plaintiff did not receive any distributions of HWCP's assets or income following dissolution, despite entitlement to 50% of such assets and income.  Plaintiff is informed and believes, and thereupon alleges, that all assets and income of HWCP were improperly distributed to or appropriated by Defendant, in his individual capacity, following the improper dissolution of the entity.

135.    Defendant's actions described herein constitute an improper distribution of assets following dissolution and a violation of BCL §719.

136.    As a result of the foregoing, Plaintiff has been injured, and Defendant has received illicit profits and wrongful gains.


### EIGHTH CAUSE OF ACTION – FORGERY

137.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 136 as though fully set forth herein.

138.   At all relevant times, Plaintiff has rightly held a 50% ownership interest in HWCP and entitled to 50% management and control of the entity.  Plaintiff's ownership interest was recognized on numerous tax filings by HWCP, prepared at the direction of Defendant.

139.   Upon information and belief, formal dissolution of a New York Corporation cannot be accomplished without the assent of greater than 50% of the relevant shareholders.  As such, dissolution of HWCP could not legally occur solely at the direction of Defendant.

140.   Plaintiff is informed and believes, and thereupon alleges, that Defendant must necessarily have forged Plaintiff's name and signature to documents which purport to transfer Plaintiff's ownership interest in HWCP to Defendant, or caused another to forge Plaintiff's name.

141.   Plaintiff is likewise informed and believes, and thereupon alleges, that Defendant has forged and affixed Plaintiff's signature to copyright assignment agreements purporting to transfer Plaintiff's registered copyrights to the works described herein, without Plaintiff's knowledge, consent, or authorization.

142.   Plaintiff has been injured by Defendant's conduct, and Defendant has been unlawfully and unjustly enriched at Plaintiff's expense.

## NINTH CAUSE OF ACTION – FRAUD ON THE TRADEMARK OFFICE

(15 U.S.C. §1120)

143.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 142 as though fully set forth herein.

144.   On or around August 22, 2012, Defendant knowingly caused the United States Patent and Trademark Office to record a false or fraudulent trademark transfer, purporting to convey the entire interest and goodwill of the La Excelencia mark from HWCP to Defendant in his individual capacity.

145.   On or around September 4, 2012, Defendant filed a Trademark Application for the mark "Handle With Care Productions Inc.," with full knowledge of Plaintiff and HWCP's senior rights in the HWCP Mark as a result of the HWCP's prior use of the name in commerce.

146.     Plaintiff is informed and believes and thereupon alleges that Defendant was aware of HWCP's superior rights to use of the HWCP Mark.

147.     Plaintiff is informed and believes and thereupon alleges that Defendant must reasonably have known that a likelihood of confusion would result from Defendant's use of the HWCP Mark following the improper dissolution of HWCP

148.     Plaintiff is informed and believes and thereupon alleges that, Defendant intended to procure a registration to which Defendant was not entitled by failing to disclose the facts of HWCP's prior use of the HWCP Mark.

149.     Plaintiff and HWCP have been injured by Defendant's conduct, and Defendant has been unlawfully and unjustly enriched at Plaintiff's expense.


### TENTH CAUSE OF ACTION – FRAUD ON THE COPYRIGHT OFFICE

150.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 149 as though fully set forth herein.

151.     On December 3, 2012, Defendant filed copyright applications for two collections: Mi Tumbao Social and Ecos del Barrio.  Registration was granted for each work.

152.     Defendant filed the copyright application described in the preceding paragraph with full knowledge of Plaintiff's rights in the music, lyrics, sound recordings, and other applicable rights related to songs appearing in each collection.

153.     Plaintiff is informed and believes and thereupon alleges that, in seeking the copyright registrations for Mi Tumbao Social and Ecos del Barrio, Defendant falsely represented that he was the proper owner of all copyrights in the songs contained on these albums and that such ownership was granted to Defendant by written transfer.

154.     At no time did Plaintiff execute or consent to any transfer any applicable copyrights for his individual works of authorship that were ultimately included in the application for Mi Tumbao Social or Ecos del Barrio described herein.

155.     Plaintiff is informed and believes and thereupon alleges that the Copyright Office relied

on Defendant's misstatements  in deciding granting copyright registrations for the collections <u>Mi Tumbao Social</u> and <u>Ecos del Barrio,</u> including but not limited to the representation that Defendant received the applicable rights from Plaintiff via written assignment.

156.    As a result of the foregoing, Plaintiff has been injured, and Defendant has received illicit profits and wrongful gains.


## ELEVENTH CAUSE OF ACTION – UNJUST ENRICHMENT

157.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 156 as though fully set forth herein.

158.    As a result of the allegations and actions described herein, Defendant has received a substantial, unjustified benefit, including but not limited to assets and income rightfully belonging to Plaintiff as a result of his position in La Excelencia, HWCP, and the associated entities.

159.    As a result of the allegations and actions described herein, the substantial unjustified benefits received by Defendants have been at the Plaintiff's expense.

160.    In light of the foregoing, equity and good conscience require that Defendant make restitution to the Plaintiff for the benefits he has unjustly received, in an amount to be determined at trial.


## TWELFTH CAUSE OF ACTION – COPYRIGHT INFRINGEMENT

161.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 160 as though fully set forth herein.

162.    Plaintiff is the owner of the registered copyrights described in ¶25 herein.  These include registrations for many of Plaintiff's lyrical compositions, as described herein.

163.    Defendant has infringed, and continues to infringe, the works described in ¶25 by, inter alia, distributing Plaintiff's copyrighted lyrics via the website laexcellencia.net, and/or other media.

164.    Additionally, Plaintiff is the sole owner of the entire copyright in both the music and the lyrics for numerous copyrighted works, as described in ¶25 herein.

165.    Plaintiff is informed and believes, and thereupon alleges, that Defendant has infringed, and continues to infringe, Plaintiff's copyrights in the works identified herein by publicly performing said works, without license, consent, or authorization of the Plaintiff.

166.    As a result of the acts alleged herein, Plaintiff has been injured and Defendant has received illicit profits and wrongful gains.

167.    Defendant's conduct has caused, and if not enjoined will continue to cause additional harm to Plaintiff amounting to irreparable in a manner that cannot be calculated or adequately compensated wholly by monetary damages.  Plaintiff has no adequate remedy at law for such harm.

## THIRTEENTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES TO HWCP

168.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 167 as though fully set forth herein.

169.    By engaging in the acts alleged herein, Defendant has breached his fiduciary duties to HWCP.

170.    By engaging in the acts alleged herein, Defendant has wasted corporate assets by, *inter alia,* transferring corporate assets to himself in his individual capacity and unlawfully dissolving HWCP in order to personally enrich himself.

171.    In addition, Defendant has breached his duty of loyalty to HWCP by usurping corporate opportunities rightly belonging to HWCP.  Defendant has done this by, *inter alia,* unlawfully dissolving HWCP and continuing to conduct business using the name of the entity, including signing other musicians to a sole proprietorship that continues to operate under the name "Handle With Care Productions," despite the unlawful dissolution of the HWCP entity described herein.

**172.**    As a direct and proximate result of defendant's conduct, HWCP has suffered damages in

an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

### Injunctive Relief

For preliminary and permanent injunctive relief that:

1. Defendant, and any of his officers, agents, servants, employees, attorneys, parents, subsidiaries, and related persons and all persons acting for, with, by, through, or under the, and each of them, to be temporarily restrained from, and preliminarily and thereafter permanently enjoined and restrained from:

    a.    Seeking to register or use, in any manner, the La Excelencia mark, or any word, words, packaging and/or trade dress likely to cause confusion therewith, including without limitation the mark "La Orquesta Excelencia," in connection with the live performance and/or recording of music, the sale, manufacture, distribution, advertising or promotion of their goods and services, including but not limited to recordings and/or ancillary merchandise, so long as the goods and/or services do not emanate from, do not originate with, or are not license by Plaintiff and/or HWCP; and/or,

    b.    Using any false designation of origin or false description that can, or is likely to, lead the public or individual members thereof, to believe that any goods and services created, performed, distributed, or sold by Defendants, including but not limited to live performances, sound recordings, and/or ancillary apparel and other merchandise, is in any manner associated or connected with Plaintiff and/or HWCP, or is sold, manufactured, licensed, sponsored, or approved by the Plaintiff and/or HWCP; and/or

    c.    Using the website  laexcelencia.net or the Facebook page for "La Excelencia" to advertise, promote, sell, or engage in any other activity related to the New Band, or for any purposes unrelated to the Original Band; and/or

    d.    Otherwise engaging in any other activity constituting an infringement of

the La Excelencia name and mark, or any other trademark owned by HWCP or Plaintiff, and/or from unfairly competing with Plaintiff in any way;

2.  Defendant shall file with the Court and serve upon Plaintiff's counsel within thirty days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the requirements of the Injunction and Order;

### Damages

3.  Defendants be required to account for and pay over to Plaintiff and/or HWCP all damages sustained by Plaintiff and/or HWCP and any and all profits realized by Defendant by reason of his unlawful acts alleged herein, in an amount to be proven at trial, and that such amounts be trebled, where provided by law;

4.  Plaintiff likewise requests an order for damages as to the copyright infringement claims consisting of actual damages and any profits of the Defendant attributable to the infringing acts of defendant, consistent with 17 U.S.C. 504(a)(1), or, upon election, an award of statutory damages consistent with 17 U.S.C. 504(a)(2), together with prejudgment and post-judgment interest;

5.  Damages pursuant to 15 U.S.C. §1117(a) consisting of Defendant's profits, all damages sustained by Plaintiff, and the costs of pursuing the instant action;

6.  An award against defendant and in favor of HWCP, Inc., for the full amount of damages sustained by the Company as a result of the defendant's breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

### Other Relief

7.  Judgment for an accounting of the amounts due from Defendants to Plaintiff and requiring defendant to pay the amount found to be due in the accounting, along with interest, costs and applicable attorney's fees, pursuant to the Lanham Act;

8.  An award of full costs and reasonable attorney's fees against Defendant in favor of Julian Silva pursuant to 17 U.S.C. §505;

26

9. An award of costs and attorney's fees available in exceptional cases, pursuant to the Lanham Act, 15 U.S.C. §1117(a);

10. An award of other costs and disbursements of the action, including reasonable attorney's fees, accountants and experts fees, and expenses incurred by virtue of the derivative claims;

11. Rescission of all unauthorized transfers from HWCP to Defendant, including rescission of the purported "Handle With Care" trademark transfer and any other transfers of corporate assets to Defendant;

12. Imposition of a constructive trust on partnership or corporate assets in the possession of Defendant, for the benefit of Plaintiff and/or HWCP;

13. Declaratory relief stating that HWCP is the rightful owner of the "Handle With Care" trademark and the "La Excelencia" trademark;

14. Cancellation of Defendant's trademark registration for "Orquesta La Excellencia;"

15. Cancellation or invalidation of Defendant's copyright registrations, purportedly on behalf of claimant "La Excelencia" for the compilations entitled Ecos del Barrio and Mi Tumbao Social;

16. Any such other or further relief as may be just and proper under the circumstances.


Dated:  New York, New York
        May 7, 2013

                                **MAVRONICOLAS MUELLER & DEE LLP**
                                Attorneys for Plaintiff, Julian Silva



                                By:___/s/ Peter C. Dee_____
                                        Peter C. Dee
                                        950 Third Avenue, 10th Floor
                                        New York, New York   10022
                                        Telephone:  (646) 770-0024

## VERIFICATION

### I, Julian Silva, declare as follows:

1. At all relevant times prior to the unlawful transfer of my shares described in the foregoing complaint I was a 50% shareholder of Handle With Care Productions, Inc. and continue to be a rightful 50% shareholder thereof.

2. I have read the foregoing complaint and know the contents thereof.

3. The foregoing complaint is true based on my own knowledge, except to matters therein stated to be alleged on information and belief, and as to those matters deponent believes them to be true.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed this _7_ day of May, 2013, in _Palo Alto_____ , California



Julian Silva

State of CALIFORNIA
County of SANTA CLARA

Subscribed and sworn (or affirmed) before me on this 7TH
of May 2013, by JULIAN SILVA, who proved to me
on the basis of satisfactory evidence to be the person who
appeared before me.

WITNESS my hand and official seal.

KELLY S. YILMAZ
Commission # 1927317
Notary Public - California
Santa Clara County
My Comm. Expires Mar 29, 2015